United States Court of Appeals
Fifth Circuit

**F I L E D**

January 30, 2007

Charles R. Fulbruge III
Clerk

REVISED JULY 13, 2007
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))

No. 06-40751

)))))))))))))))))))))))))))

ALMA RAMIREZ,

 Plaintiff-Appellant,

 versus

ALBERTO GONZALES, ATTORNEY GENERAL OF THE UNITED STATES,

 Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
No. 5:03-CV-372

_____

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

PER CURIAM:[*]

 Plaintiff-Appellant Alma Ramirez ("Ramirez") appeals the district court's granting of Defendant-Appellee Alberto Gonzales's[1] motion for summary judgment on Ramirez's race/national origin discrimination and retaliation claims under Title VII of the Civil

_____

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

[1] Though the Attorney General is the named party to the lawsuit, this opinion shall refer to the Defendant-Appellee as the United States Attorney's Office, Corpus Christi office, ("USAO") because Ramirez's Title VII claims arise from her employment there.

Rights Act of 1964. Because no genuine issues of material fact exist with respect to Ramirez's claims, we AFFIRM the district court's grant of summary judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

In July 2001, the USAO hired Ramirez, a Hispanic, as a Litigation Support Specialist with a one-year probationary period. The primary duties of the position included providing technology and automated litigation services to the attorneys and support staff, aiding Assistant United States Attorneys ("AUSAs") in trial preparation and presentations, coordinating and providing personnel training on litigation support equipment and research techniques, and developing databases and reports for litigation and administrative purposes. Ramirez would not survive the probationary period. On January 7, 2002, the USAO sent Ramirez a letter informing her that she would be terminated for her "inability to follow office procedures essential to the proper handling of cases in the United States Attorney's office" and her "failure to recognize and react to office needs." Ramirez alleges that her termination was the result of race/national origin discrimination and in retaliation for engaging in protected Title VII activities.

Ramirez contends that Debra Hohle ("Hohle"), her supervisor and the Office Manager, subjected her to disparate treatment throughout her employment. First, Ramirez argues that Hohle treated her like a secretary instead of a Litigation Support Specialist and made her

2

perform secretarial tasks such as answering the phone, serving as a receptionist, processing mail, and acknowledging visitors. Second, Ramirez maintains that she was treated differently than two white employees, Diana Winstead ("Winstead") and Julie Gerardi ("Gerardi"), who she alleges had similar workplace performance deficiencies, but who were allowed to pass their probationary periods. Third, Ramirez argues that Hohle improperly terminated her because Hohle did not give her a formal written letter of counseling, warning Ramirez of her deficiencies and giving her a chance to respond to the allegations.

In addition to race/national origin discrimination, Ramirez alleges that her termination was the result of unlawful retaliation. Ramirez alleges that Hohle retaliated against her because of her friendship and close association with Adel Garcia ("Garcia"), a Hispanic employee who had filed an EEOC charge of discrimination and retaliation against the USAO before Ramirez began her employment there. Ramirez also contends that she was retaliated against because in October 2001, the American Federation of Government Employees, Local 3966 ("Union") filed a grievance against the USAO which alleged, in part, a hostile working environment, preferential treatment of certain employees, and discrimination against certain employees. Finally, Ramirez recounts an incident in which she overheard co-workers joking about another employee's hostile work environment claim. Ramirez asked the co-workers to stop and reported the comments to Gerardi, who was acting as Office Manager

3

in Hohle's absence.  Ramirez alleges that this incident was a predicate for retaliation.

After her termination, Ramirez brought a Title VII suit against the USAO, alleging race/national origin discrimination and retaliation.  The USAO filed for summary judgment, which the district court granted on February 23, 2006.  Ramirez now appeals.

## II. JURISDICTION AND STANDARD OF REVIEW

This appeal arises from a final judgment of the district court, so we have jurisdiction over this appeal under 28 U.S.C. § 1291.

This court reviews a summary judgment de novo.  Dallas County Hosp. Dist. v. Assocs. Health & Welfare Plan, 293 F.3d 282, 285 (5th Cir. 2002). Summary judgment is proper when the pleadings, discovery responses, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.  FED. R. CIV. P. 56(c).  A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When deciding whether there is a genuine issue of material fact, this court must view all evidence in the light most favorable to the non-moving party.  Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir. 2001).

## III. DISCUSSION

Title VII prohibits an employer from intentionally

4

discriminating against any employee based on the employee's race or national origin, 42 U.S.C. § 2000e-2(a)(1). Intentional discrimination may be established through either direct or circumstantial evidence. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 (5th Cir. 2001). When there is no direct evidence of discrimination, as in this case, the Title VII claims are subject to the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316 (5th Cir. 2004).

Under the McDonnell Douglas framework, the employee must create a presumption of intentional discrimination or retaliation by presenting evidence to establish a prima facie case. Davis, 383 F.3d at 317. Once the employee has established the prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory or non-retaliatory reason for the underlying employment action. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). The employer's burden is "one of production, not persuasion; it can involve no credibility assessment." Id. If the employer sustains this burden, the presumption of discrimination or retaliation falls away, and the burden shifts back to the employee to establish that the employer's proffered reason is merely a pretext for discrimination or retaliation. Davis, 383 F.3d at 317. Courts must be mindful that despite the shifting evidentiary framework, the "ultimate burden of persuading the trier of fact . . . remains at all times with the

5

plaintiff." Reeves, 530 U.S. at 143.

A. Race/National Origin Discrimination

Ramirez contends that her termination was the result of race/national origin discrimination in violation of Title VII. In order to establish a prima facie case of discriminatory discharge, Ramirez must prove that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside of her protected class. See Wheeler v. BL Dev. Corp., 415 F.3d 399, 405 (5th Cir. 2005). It is undisputed that Ramirez established a prima facie case of discriminatory discharge.

Because Ramirez has met her initial burden of establishing a prima facie case of discriminatory discharge, the burden then shifts to the USAO to articulate a legitimate, non-discriminatory reason for Ramirez's termination. The USAO points to its January 7, 2002 termination letter as evidence of its legitimate, non-discriminatory reasons for terminating Ramirez. The letter stated that Ramirez "demonstrated an inability to follow office procedures essential to the proper handling of cases" in the USAO. As evidence in support of this claim, the letter cites to the facts that Ramirez (1) failed to complete reports, (2) refused to answer telephone calls despite being instructed to do so by Hohle, (3) did not assist an AUSA because Ramirez believed the task was not within her job description, (4) made excessive personal telephone calls, and (5) left a training program early without permission. The letter also

6

noted that Ramirez failed to "recognize and react to office needs." Examples of this alleged deficiency included Ramirez's failure to (1) respond to or acknowledge visitors when they entered the office and (2) mention that an attorney who was unexpectedly unable to return to the office had charged her with preparing photo exhibits in two pending cases. The USAO produced deposition testimony to substantiate the allegations in the termination letter.

Having met its burden of establishing legitimate, non-discriminatory reasons for Ramirez's termination, the burden now shifts to Ramirez to establish that these reasons were merely pretexts for discrimination. Ramirez first attempts to meet this burden by disputing the USAO's characterization of her job performance and providing some explanations for her alleged deficiencies. To take one example, Ramirez contends that she made personal telephone calls before work.

Ramirez cannot survive summary judgment simply by denying or explaining her alleged deficiencies. The proper inquiry is "whether [the USAO]'s *perception* of [Ramirez]'s performance, accurate or not, was the real reason for her termination." Shackleford v. Deloitte & Touche, LLP, 190 F.3d 398, 408-409 (5th Cir. 1999); see also Laxton v. Gap Inc., 333 F.3d 572, 579 (5th Cir. 2003) ("[The inquiry] is not whether [the employer]'s proffered reason was an *incorrect* reason for [the discharge]"). As we explained in Mayberry v. Vought Aircraft Co.:

> [E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue . . . [A] dispute in the evidence concerning . . . job performance does not provide a sufficient basis for a reasonable factfinder to infer that [the] proffered justification is unworthy of credence.

55 F.3d 1086, 1091 (5th Cir. 1991). Ramirez has provided no evidence that Hohle and the USAO did not perceive her job performance as deficient. In fact, the incontrovertible summary judgment evidence shows that Hohle received numerous complaints about Ramirez's job performance from staff colleagues, AUSAs, and an outside caller.

Ramirez also attempts to show pretext by arguing that two white employees, Winstead and Gerardi, were allowed to pass their probationary period despite deficiencies similar to those which resulted in Ramirez's termination. In order to prove disparate treatment, Ramirez must demonstrate "that the misconduct for which she was discharged was nearly identical to that engaged in by a[n] employee [not within her protected class] whom [the employer] retained." Wallace, 271 F.3d at 221. As the district court ably demonstrated, the summary judgment record does not support Ramirez's contention that she was treated differently under nearly identical circumstances. First, Ramirez was not similarly situated to Winstead, a legal secretary, and Gerardi, a paralegal specialist, because they both held positions different from that of Ramirez with different job duties. Although all three shared some minor

secretarial duties, Ramirez's own self-prepared weekly work assignment reports showed that the majority of her tasks were not the same as or similar to the work performed by Winstead and Gerardi. Further, Gerardi was a permanent employee throughout Ramirez's employment and Winstead completed her probationary period two months after Ramirez began working for the USAO.

At her deposition, Ramirez testified that Hohle reprimanded Winstead for leaving the telephone unattended while she had copier training and for filling out vouchers incorrectly. While there is some similarity between these allegations and some of deficiencies noted in Ramirez's termination letter, they are not "nearly identical" because Ramirez's termination letter notes numerous other deficiencies. Cf. Wallace, 271 F.3d at 221. Ramirez does make a general allegation that Winstead and Gerardi were "found to have the same deficiencies in conduct and performance"--this could suggest that there were other unspecified deficiencies which would make the cases more similar--but general, conclusory, and unsubstantiated statements do not constitute competent summary judgment evidence. See Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

Ramirez next attempts to establish pretext by relying on the testimony of Christina Ybarra, an employee of the USAO, who stated that the Anglo Litigation Support Specialist hired to replace Ramirez does not have to perform the secretarial duties that Ramirez did. The unrebutted evidence produced by the USAO provides a

9

reasonable explanation for this disparity. First, at the time of Ramirez's employment, all support staff had to perform some secretarial duties, not just Ramirez. Second, Ramirez concedes that a full-time receptionist was hired some time after Ramirez's termination, reducing the reception duties for all support staff. Third, the administrative/secretarial load has been reduced for all members of the USAO support staff because they no longer have to perform certain duties, such as preparing jail lists, which were required while Ramirez was employed there.

Finally, Ramirez raises a potpourri of issues which she alleges establishes pretext. As evidence of pretext, Ramirez cites to the facts that (1) there has been no Hispanic lead AUSA while Hohle has been employed in the Corpus Christi office, (2) the USAO failed to follow Office of Personnel Management procedures in terminating her, (3) comments were made that Ramirez dressed elegantly, which she interprets as suggesting that Hispanics should not be dressed nicely and (4) Garcia testified that Hohle did not like Hispanics and that Hohle felt there were certain jobs only white employees could do. All of these allegations suffer from being conclusory and unsubstantiated. As such, they do not constitute proper summary judgment evidence. See Douglass, 79 F.3d at 1429.

Though Ramirez established a prima facie case of race/national origin discrimination, the USAO provided numerous legitimate, non-discriminatory reasons for Ramirez's termination. Ramirez has provided no evidence which creates an issue of material fact

10

demonstrating that these reasons were a mere pretext for intentional discrimination. Therefore, Ramirez's claims for race/national origin discrimination must fail. We next turn to whether the USAO violated Title VII by terminating Ramirez in retaliation for engaging in protected activities.

B. Retaliation

In order to establish a prima facie case of retaliation, Ramirez must demonstrate that: (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action. Webb v. Cardiothoracic Surgery Assoc., 139 F.3d 532, 540 (5th Cir. 1998). Undoubtedly, Ramirez experienced an adverse employment action when she was terminated. See Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006) (defining adverse employment action as an action which would dissuade "a reasonable worker from making or supporting a charge of discrimination"). The primary issue on appeal is whether Ramirez engaged in any protected activities.

Ramirez alleges four instances in which she engaged in a protected activity, namely: (1) Ramirez's close association with Garcia, an employee who filed a EEOC charge of discrimination against the USAO, (2) her complaint to Gerardi about co-workers making jokes about another employee's hostile work environment claim, (3) her being represented by the Union, which filed a grievance alleging discrimination, and (4) Hohle's comments about

11

Ramirez's association with unions.  None of these allegations are sufficient to establish a prima facie case of retaliation.

Ramirez's close association with Garcia, who filed an EEOC complaint before Ramirez joined the office, does not establish that Ramirez engaged in a protected activity.  Filing an EEOC complaint is clearly a protected activity.  See Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 439 (5th Cir. 2005).  We have previously held, however, that an individual does not have automatic standing to sue for retaliation simply because a friend or spouse engaged in a protected activity; rather, the individual herself must have participated in some manner in the protected conduct.  Holt v. JTM Indus., Inc., 89 F.3d 1224, 1226-27 (5th Cir. 1996) (applying this holding to an ADEA case, but noting that "the anti-retaliation provisions of the ADEA and Title VII are similar").  With respect to her close association with Garcia, Ramirez did not engage in a protected activity because she has not alleged that she participated in any manner in Garcia's complaint.[2]

---

[2] Ramirez cites to the EEOC website for the proposition that an individual is a "covered individual" for Title VII retaliation through mere association with an individual who engages in a protected activity.  http://www.eeoc.gov/types/retaliation.html (last accessed Jan. 2, 2007).  The website states:
    Covered individuals are people who have opposed unlawful practices, participated in proceedings, or requested accommodations related to employment discrimination based on race, color, sex, religion, national origin, age, or disability. Individuals who have a close association with someone who has engaged in such protected activity also are covered individuals. For example, it is illegal to terminate an employee because his spouse participated in employment discrimination litigation.

12

Ramirez's complaint to Gerardi, who was acting as Office Manager in Hohle's absence, that her co-workers were making jokes about another employee who had filed an EEOC complaint also fails to establish a prima facie case of retaliation. The district court correctly concluded that there was no causal link between Ramirez's complaint to Gerardi and her termination three months later.[3] Fifth Circuit precedent requires evidence of knowledge of the protected activity on the part of the decision maker and temporal proximity between the protected activity and the adverse employment action. See Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997). In this case, Hohle, not Gerardi, was the decision maker in Ramirez's termination. Ramirez concedes that she does not know if Hohle ever found out about her complaint to Gerardi. Further, upon review of Hohle's deposition testimony, the district court concluded that there was no testimony from which it could infer that Hohle knew of the complaint and considered it in her decision to terminate Ramirez. Without any evidence that Hohle knew of Ramirez's

Id. This non-binding advisory document aimed at the general public clearly conflicts with Fifth Circuit precedent as articulated in Holt. 89 F.3d at 1226-27 (finding no automatic standing to sue for retaliation simply because a friend or spouse engaged in a protected activity; rather, the individual herself must have participated in some manner in the protected conduct).

[3] The USAO objected to the district court that Ramirez's complaint to Gerardi did not constitute a protected activity. Because we agree with the district court that there is no causal connection between Ramirez's making the complaint and her termination, we do not decide whether Ramirez's complaint was a protected activity.

complaint when she decided to terminate Ramirez three months later, Ramirez cannot establish a prima facie case of retaliation.

Ramirez next relies on a Union grievance which complained of a hostile work environment and discriminatory treatment as well as allegedly anti-union comments made by Hohle to establish that she engaged in a protected activity. These allegations raise a matter which this circuit has never squarely determined, namely, whether union activities are protected activities under Title VII. We do not need to determine this issue to resolve the merits of Ramirez's appeal. Though the Union did file a grievance which alleged discrimination and a hostile work environment, this evidence alone does not demonstrate that Ramirez engaged in a protected activity. Ramirez would need to show that she participated in some manner in filing the Union grievance. See Holt, 89 F.3d at 1226-27.

Finally, Ramirez attempts to link anti-union comments made by Hohle to her termination. To establish that Hohle made anti-union comments, Ramirez cites to the deposition testimony of Jeanell Walker, the Union president. Walker recounts a conversation with Nora Longoria, a legal secretary, in which Longoria recounted how Hohle told her that she had a problem with Ramirez being part of a union. The district court correctly ruled that this statement was hearsay. Ramirez argues that the statements are admissible as non-hearsay under the party opponent exception to the hearsay rule. Ramirez's argument fails because Walker's testimony is double hearsay. Under the Federal Rules of Evidence, "[h]earsay within

14

hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." FED. R. EVID. 805. Hohle's remarks to Longoria would probably fall within the party opponent exception. However, Longoria's comments to Walker do not fall within the party opponent exception because they concerned matters outside the scope of her employment, since Longoria was not involved in the decision to terminate Ramirez. See FED. R. EVID. 801(d)(2)(D) (requiring statement by a party's agent or servant to be made within the scope of employment); see also Breneman v. Kennecott Corp., 799 F.2d 470, 473 (9th Cir. 1986) (finding statements not within scope of employment when declarants relating what decision maker said were not involved in the company's discharge of plaintiff).

Ramirez has failed to establish a prima facie case of retaliation. Therefore, the district court did not err in granting summary judgment on Ramirez's Title VII retaliation claim.

## IV. CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.

AFFIRMED.

15