# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-60431

United States Court of Appeals
Fifth Circuit

**FILED**
June 19, 2017

Lyle W. Cayce
Clerk

VIRGINIA LAY,

> Plaintiff - Appellant

v.

SINGING RIVER HEALTH SYSTEM,

> Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:15-CV-130

Before BARKSDALE, GRAVES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Virginia Lay challenges the summary judgment granted Singing River Health System against this action, which claims age discrimination in her termination in conjunction with a reduction-in-force. She fails to show a genuine dispute of material fact for whether Singing River's reason for termination was pretext for such claimed discrimination. AFFIRMED.

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 16-60431

I.

Singing River is a non-profit healthcare provider in Jackson County, Mississippi. Lay began working for Singing River as director of managed care in 1999, at age 50. In that position, according to her deposition, she was responsible for, *inter alia*: "[m]anaged care contracting, reviewing, working with insurance companies to become in network with" them, and running the physician hospital organization at Singing River, Premier Health.

In 2013, Singing River moved Lay's managed-care department within the clinical-integration department, as discussed *infra*. In doing so, Lay went from reporting directly to the chief financial officer (CFO), Louis Lee Bond, to reporting to the vice president of clinical integration, Chris Morgan, then age 50. As Morgan explained in his deposition, "managed care was transferred to [clinical integration] because of the . . . similarity in work" between the two departments. He further stated: "the purpose of clinical integration is to sell services. So is managed care[; its purpose] is to sell services".

Through an audit in early 2014, Singing River discovered an $88 million shortfall caused by overstatements of accounts receivable. According to the deposition of Singing River's chief executive officer (CEO), Kevin Holland, the audit forced the hospital "into a position of having to evaluate everything that we were doing and evaluate every position in the organization. And we determined where we were effective, where we were not effective".

On the verge of bankruptcy, Singing River hired an outside consultant, The Godbey Group, to evaluate, *inter alia*, the performance of the managed-care department. Godbey found Singing River's "historical approach to financial services . . . [i]ncluding the managed care" contracts "woefully inadequate". According to CEO Holland, on Godbey's recommendation, Singing River "went back and renegotiated all of [its] managed care contracts, and [it] had a tremendous amount of success with that".

2

No. 16-60431

During the restructuring in April 2014, Morgan, CEO Holland, and chief human resources officer (CHRO), Craig Summerlin, discussed possible changes to Morgan and Lay's department. As Morgan stated in his deposition, he, CEO Holland, and CHRO Summerlin "decided that [they] would eliminate [Lay]'s position, that [they] would restructure, . . . and that [they] could probably get by with one person; and then merge managed care with clinical integration to provide more support for whatever parts of clinical integration and managed care would continue".

Singing River's decisionmakers combined portions of Lay's and Morgan's jobs into a new director-of-collaborative-care-network position. Morgan decided to leave Singing River within a month of formulating the restructuring plan, knowing the restructuring would adversely affect his job as well.

Before leaving, Morgan met with Lay and CHRO Summerlin on 22 April 2014 to discuss the restructuring of the managed-care department. Lay stated in her deposition that Morgan told her she had to retire, but did not mention that her position was being eliminated. Rather, she stated, Morgan said: "We're looking for people like you who can get the retirement and make the high salary". The parties agree Lay was able to work through June 2014 to maximize her retirement benefits.

When deposed, Morgan could not recall whether Lay expressly accepted the retirement plan, but he construed as her acceptance her assistance in drafting her farewell email. Morgan sent that email to the Singing River staff on 25 April 2014. In response, Lay's 7 May 2014 email to Morgan stated she had "a number of productive years left and therefore [she was] not willing to retire" because doing so would cause "considerable financial hardship".

Soon thereafter, Lay met again with Morgan and CHRO Summerlin to discuss her retirement. In her deposition, Lay stated: she was first informed her position was being "eliminated" at this second meeting; and she was

advised she could apply for other positions within Singing River. Before her position ended, Lay was again encouraged to monitor the Singing River website for job postings of interest to her.

According to Lay, she was forced to retire. In that regard, Lay decided not to apply for any positions at Singing River, and stated in her deposition she did not apply for the position she contends replaced her own because the job description included requiring a master's degree, which she did not have. In her deposition, she stated no one dissuaded her from applying for the position; she understood her position was to be combined with her supervisor's to create a new position; and she admitted her assertion—later made plain in her opening brief here—that the new position's responsibilities overlapped with her former responsibilities by "99.9%" was conjecture, based on her cursory review of the new job posting online and the remarks of two employees.

Lay made few attempts to seek comparable employment; and her search for comparable positions concluded after a single conversation with a professional at another local hospital, in which she was told that hospital was not looking to fill a comparable position. At the end of her work for Singing River in June 2014, Lay earned $160,000 annually. Her job search concluded when she took a full-time job, earning $3,000 monthly.

Around the time the restructuring plan was created—April 2014, before Lay left Singing River—CFO Bond hired Brian Argo as executive director of finance. After Lay's alleged forced retirement, Argo temporarily took over her responsibilities running the managed-care department.

Argo was 30 and had a master's degree. He had previously served as vice president and chief revenue officer for the Children's Hospital Medical Center in Omaha, Nebraska. Initially, he oversaw some of managed care, Lay's former work. At the same time, Argo continued to oversee the finance

department. He stated in his deposition that Lay's previous duties, which he assumed, did not consume the majority of his day.

Argo continued handling managed care until January 2015, when he hired Jason Rickley, then 32, to fill the new director-of-collaborative-care-network position—which, as previously noted, effectively combined Morgan's clinical-integration and Lay's managed-care positions. The position streamlined collaborative-care and managed-care elements, along with analytical elements and population-health initiatives. Collaborative care involved providing credentialing for providers. As CFO Bond stated in his deposition, the new job included duties distinct from those for which Lay had experience.

The director-of-collaborative-care-network job description was posted in November 2014. After being hired in January 2015, Rickley did not work strictly on managed care, as Lay had. In addition to managed-care contracting, Rickley performed reimbursement contract modeling and analysis, and monitored Singing River's population-health initiative—managing patients' health and hospital experience from start to finish. His annual salary was $110,000. When hired, he was enrolled in a master's-degree program in healthcare administration.

Lay filed this action in April 2015, claiming she was terminated because of her age. Singing River moved for summary judgment approximately a year later. The motion was granted in June 2016. *Lay v. Singing River Health Sys.*, 190 F. Supp. 3d 599, 601 (S.D. Miss. 2016).

In granting summary judgment, the court concluded Lay failed to demonstrate a genuine dispute of material fact "regarding whether age was a factor in Singing River's decision to terminate her employment". *Id.* Contrary to discrimination, the court highlighted: "Morgan in fact delayed termination of Lay's position until she was eligible for retirement benefits". *Id.* at 603.

No. 16-60431

Concluding "Lay was clearly terminated as part of a reduction-in-force", and applying the "slightly different *prima facie* elements for a reduction-in-force case", the court ruled there were no genuine disputes of material fact to rebut Singing River's proffered "legitimate, non-discriminatory reason" for eliminating Lay's position. *Id.* at 602–03.

## II.

The summary-judgment record consists of depositions of Lay; CHRO Summerlin; CEO Holland; former vice president of clinical integration, Morgan; CFO Bond; director of revenue integrity, Mark LaFontaine; executive director of finance, Argo; director of collaborative-care network, Rickley; executive assistant to CEO Holland, Windy Taylor; Epic implementation director, Sandra Murray; and benefits specialist, Hattie Williams. Also in the record are Singing River's job descriptions for revenue-cycle project director (a position similar to managed-care director), director of collaborative-care network, and vice president of clinical integration; declarations by CHRO Summerlin and CFO Bond; Lay's work evaluations for 2010, 2011, and 2013; EEOC charges filed by Lay and Murray; news publications reporting on the financial shortfall; emails and other correspondence; the list of individuals terminated by Singing River in conjunction with the reduction-in-force; Lay's second amended complaint; and Singing River's discovery responses.

It goes without saying that a summary judgment is reviewed *de novo*, applying the same standard as the district court. *E.g.*, *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citing *Threadgill v. Prudential Sec. Grp., Inc.*, 145 F.3d 286, 292 (5th Cir. 1998)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Along that line, the evidence in the summary-judgment record is viewed in the light most favorable to the non-movant. *E.g.*, *Davidson v. City*

*of Stafford, Tex.*, 848 F.3d 384, 390 (5th Cir. 2017).  In other words, summary judgment is improper if a reasonable factfinder could find in favor of the non-movant.  *E.g.*, *id.* at 394 (reversing summary judgment because factual disputes resolved favorably for the non-movant constituted a colorable claim).  In that regard, mere conclusory allegations will not defeat a summary-judgment motion because they do not constitute competent summary-judgment evidence.  *E.g.*, *Moss*, 610 F.3d at 922.

The Age Discrimination in Employment Act (ADEA) proscribes an employer's "discharg[ing] any individual" because of his or her age.  29 U.S.C. § 623(a)(1).  Under the ADEA, Lay must demonstrate she would not have been terminated but for the alleged discrimination.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

Toward that end, the more than well-known burden-shifting analysis is employed.  A plaintiff who establishes a *prima facie* case of age discrimination "raises an inference of unlawful discrimination".  *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).  As a result,

> [t]he burden of production then shifts to the defendant to proffer a legitimate, non-discriminatory reason for the challenged employment action.  The defendant may meet this burden by presenting evidence that "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action."

*Id.* (internal citation omitted) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–08 (1993)).  If defendant meets that burden, "the presumption of discrimination created by the plaintiff's prima facie case disappears and the plaintiff must meet [her] ultimate burden of persuasion on the issue of intentional discrimination".  *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).

No. 16-60431

A.

The parties agree Lay was terminated during a reduction-in-force (RIF). For such RIF circumstances, the elements for the requisite *prima facie* case are:

> In a reduction-in-force case, a plaintiff makes out a *prima facie* case by showing (1) that [s]he is within the protected age group; (2) that [s]he has been adversely affected by the employer's decision; (3) that [s]he was qualified to assume another position at the time of the discharge; and (4) "evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue."

*Nichols*, 81 F.3d at 41 (quoting *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 812 (5th Cir. 1991)).

In granting summary judgment, the district court assumed *arguendo* a *prima facie* case was established. *Lay*, 190 F. Supp. 3d at 602 ("the Court will assume without deciding that Lay has cleared the relatively low hurdle of establishing a *prima facie* case"). Although the *prima facie vel non* issue was inadequately briefed here, we will likewise assume *arguendo* that a *prima facie* case is established. (To that end, appellant's brief should include citations to the record in the argument section and not merely in the earlier recitation of facts.)

Accordingly, at issue are:  whether Singing River proffers "a legitimate, non-discriminatory reason for the challenged employment action", *Nichols*, 81 F.3d at 41; and, if so, whether Lay "meet[s her] ultimate burden of persuasion on the issue of intentional discrimination", *Machinchick*, 398 F.3d at 350.

B.

For its claimed non-discriminatory reason, Singing River contends:  it restructured multiple departments during large-scale financial hardship; and

8

No. 16-60431

Lay's was one of many positions eliminated. Eliminating positions amidst department restructuring is legitimate and non-discriminatory. *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 356–57 (5th Cir. 2007).

The summary-judgment record documents the weight of Singing River's financial burden, with an audit's confirming $30 million in losses in 2013 and 2014 each. Obviously, questioning how an entity handled a financial crisis—even proving its decisions ill-advised—does not amount, without more, to pretext for discrimination. "Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). Because Lay's position was not singularly eliminated, and because the elimination was part of significant restructuring during well-demonstrated financial hardship, Singing River presents "a legitimate, non-discriminatory reason for the challenged employment action". *Nichols*, 81 F.3d at 41.

## C.

Therefore, the "ultimate burden" rests with Lay. *Machinchick*, 398 F.3d at 350. Relying on *Rachid v. Jack in the Box, Inc.*, Lay asserts a reasonable factfinder could find age discrimination was the more likely reason for her termination than the reasons offered by Singing River. 376 F.3d 305 (5th Cir. 2004).

Among the evidence cited for purportedly establishing a reasonable factfinder could determine age discrimination was Singing River's more likely motivation, Lay notes Rickley, whom she views as her replacement, is half her age. She further contends she was forced to retire because of her age and pension status. Finally, Lay contends, through depositions: a Singing River human-resources employee, Sandra Murray, told Lay that she saw age discrimination in firing "all the time"; and Windy Taylor, the former assistant

No. 16-60431

to Singing River's CEO Holland, stated Holland made a disparaging remark about older female employees in 2005.

1.

While Lay claims her position was replaced by a higher-paid position of essentially identical function, CFO Bond stated in his deposition that the new position consolidated not only Lay's prior responsibilities but those of her supervisor, Morgan, such that a one-to-one comparison is inappropriate. Morgan stated in his deposition that he understood his job "was going to be eliminated and/or merged", and he took part in developing that strategy.

Lay asserts:  the new position "entailed 99.9% of [her] previous job duties under a different title"; and Singing River did not save money in eliminating her position because the new employee whose responsibilities included hers was paid a higher salary.  The "99.9%" assertion in Lay's brief appears to derive from her deposition, when, as discussed *supra*, she stated she estimated the calculation from the job profile she read online.  Lay further stated she did "[n]ot specifically" know the full responsibilities required for the new position.  A reasonable factfinder would not be persuaded by pure conjecture; there is no genuine dispute of material fact on this point.  *Berquist*, 500 F.3d at 356.

Again, to the question of cost via an allegedly higher-paid position, Lay neither challenges the record's confirming $30 million losses in 2013 and 2014, nor overcomes our court's not critiquing business decisions, to the extent they do not evidence discrimination.  *LeMaire*, 480 F.3d at 391.  Accordingly, to the extent Lay contends she was "replaced" by someone half her age, replacement is an inaccurate characterization; therefore, the new employee's age is immaterial.  As to being "replaced" by anyone, Lay "fails to raise a genuine [dispute] of material fact regarding the evidence presented to support [Singing River]'s legitimate, non-discriminatory reason for [her] termination".  *Berquist*, 500 F.3d at 356.

10

2.

Next, Lay contends she was forced to retire because of her age and pension status. "We do not preclude the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older thereby engages in age discrimination." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 612–13 (1993).

The summary-judgment record, however, demonstrates Lay was not forced to retire, as though a younger person replaced her precise position: her position was eliminated, among other positions, amidst financially-driven restructuring. The summary-judgment record demonstrates discussions of Lay's retirement status were held subsequent to acknowledgement that her position would be eliminated. Lay points to nothing in the summary-judgment record demonstrating her age was expressly discussed during conversations about her termination.

Because Lay provides no evidence that her superiors' discussion of her pension status was made in anything other than a helpful spirit, Lay does not create a genuine dispute of material fact concerning whether Singing River "target[ed] employees with a particular pension status". *Id.* Therefore, as to whether Lay was forced to retire, she "fails to raise a genuine [dispute] of material fact regarding the evidence presented to support [Singing River]'s legitimate, non-discriminatory reason for [her] termination". *Berquist*, 500 F.3d at 356.

3.

Finally, Lay relies on the two above-described sets of hearsay as evidence of age discrimination. She contends, relying on the deposition of Windy Taylor, former executive assistant to Singing River's CEO Holland, that Holland made age-related derogatory comments about employees; and Lay stated in her deposition that Elaine Hiers, program specialist for payroll and retirement,

from whom the summary-judgment record contains no evidence, remarked she saw age-based discrimination "all the time" within Singing River. (Another former employee, Sandra Murray, was deposed. At her deposition, she discussed her own age-discrimination EEOC claim, though she admitted to never personally hearing any age-related discriminatory comments around Singing River regarding her or Lay. In other words, this is an instance in which a former employee, who alleged age discrimination, cannot recall a single concrete, age-related comment.)

a.

As for the alleged remarks by CEO Holland, the record demonstrates Windy Taylor, in her deposition, could recall only one remark, from 2005, approximately nine years before Lay's alleged forced retirement. Taylor recalled Holland stated women above age 40 should not be in management. Undermining the statement's veracity, Taylor admitted to speaking ill of CEO Holland and mocking him on social media. Given the ambiguity, the alleged age-related comment lacks the requisite genuine dispute of material fact.

But, even if accurate, the remark fails our court's test for workplace comments indirectly evidencing age discrimination:

> Where a plaintiff offers remarks as circumstantial evidence alongside other alleged discriminatory conduct, . . . a plaintiff need only show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker.

*Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012). In the light of *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000), *Reed* distinguished that workplace remarks offered as *direct* evidence of discrimination are still held to the *CSC Logic* test: "Remarks may serve as sufficient evidence of age discrimination if the offered comments are: 1) age

related; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue". *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996).

Here, while CEO Holland surely held leverage over any relevant decisionmakers who chose to consolidate Lay's position, the one remark his former assistant recalled was not discriminatory animus. *Reed*, 701 F.3d at 441. The alleged 2005 remark's absence of implication that "senior managers were to be fired to make room for younger trainees" weighs against such animus. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). "Moreover, even if [the comment was] direct evidence of discrimination, this evidence is 'insignificant in comparison to the evidence of' [Singing River]'s legitimate reasons for [Lay's RIF retirement], and 'thus is insufficient, on its own, to establish discrimination'". *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016) (quoting *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (*Rodriguez* was appealed after summary judgment rather than after trial.)) And, obviously, the alleged comment is far from being "proximate in time" to Lay's retirement.

b.

The second point of hearsay was the alleged comment by Elaine Hiers, a payroll and retirement specialist in Singing River's human-resources department. Lay stated in her deposition that Hiers, learning of Lay's severance, recounted to Lay seeing age discrimination at Singing River "all the time". As noted, the summary-judgment record contains no deposition of, or other evidence from, Hiers; there is only an email from Lay to Hiers requesting a meeting after Morgan's email announcing Lay's retirement.

Needless to say, Lay's recollection of Hiers' statement is inadmissible hearsay. Lay contends the statement is an admission by a party opponent,

which, subject to Federal Rule of Evidence 801(d)(2)(D), is not hearsay. Hiers, however, was not a party opponent for the purpose of employment-discrimination proceedings.

To qualify for that exception, "the declarant must be involved in the decision making process affecting the employment action involved". *Kelly ex rel. All Heirs at Law of Kelly v. Labouisse*, No. 3:07-cv-631, 2009 WL 427103, at \*3 (S.D. Miss. 19 Feb. 2009), *aff'd sub nom. Kelly v. Labouisse*, 364 F. App'x 895 (5th Cir. 2010); *see also Ramirez v. Gonzales*, 225 F. App'x 203, 210 (5th Cir. 2007). Lay does not contend Hiers was involved in any of the RIF retirement-or-hiring decisions at issue in this action, rendering the alleged statement inadmissible for summary-judgment consideration.

But, even assuming *arguendo* the alleged statement is an admission by a party opponent, the remark fails the *Reed* standard for workplace remarks constituting circumstantial evidence of age discrimination: Hiers was neither "primarily responsible for the challenged employment action" nor "a person with influence or leverage over the relevant decisionmaker". *Reed*, 701 F.3d at 441.

Finally, Lay emphasizes *Reeves*, in which the Supreme Court overturned our court's reversal of a jury verdict for age discrimination because our court "failed to draw all reasonable inferences in favor of [plaintiff]", *inter alia* relying on non-dispositive evidence for defendant's proffered non-discriminatory firing rationale, and discounting age-related comments "not made in the direct context of [plaintiff's] termination". 530 U.S. at 152–53. *Reeves*, however, is distinguishable.

In *Reeves*, but not in the present action: plaintiff was fired outright and not encouraged to apply for other positions in the company; plaintiff directly rebutted claims of poor performance through records demonstrating satisfactory performance; plaintiff testified defendant made disparaging, age-

No. 16-60431

related comments directly to, and about, plaintiff; defendant offered no contention of eliminating plaintiff's position out of financial necessity; and a jury found for plaintiff prior to appeal. *Id.* at 144–45 (plaintiff fired, rebutted poor performance, no dispositive evidence supporting defendant's explanation); 151–52 (age-disparaging comments); 139 (jury verdict for plaintiff). Most notably, *Reeves* did not involve a RIF, which is evaluated by the earlier-described separate *prima facie* standard. *See generally id.*; *Nichols*, 81 F.3d at 41.

Lay offers nothing but conjecture about the manner in which her position was consolidated or her estimation that the new position was "99.9%" the same as her former position, based on her single review of a job posting. Lay's further conjecture that other cost-saving methods were available to Singing River is inappropriate for us to consider. *LeMaire*, 480 F.3d at 391. Lay does not contend any of the age-related comments she presents were made directly about, or to, her. The attenuation is far more pronounced than in *Reeves*.

Regarding age-related disparaging remarks made by any of Singing River's personnel, Lay fails to create "a genuine [dispute] of material fact regarding the evidence presented to support [Singing River]'s legitimate, non-discriminatory reason for [her] termination". *Berquist*, 500 F.3d at 356.

D.

Lay makes additional points which we need not engage in-depth. While Lay contends a majority of the released employees were older than age 40, as reflected in the Singing River layoff-list in the summary-judgment record, she provides no evidence regarding the overall age makeup of Singing River's employees, or the overall age makeup of new employees: we cannot determine whether her assertion is statistically significant. And, to the extent Lay contends a supervisor expressed to another eliminated employee that Singing

River wished he could stay, without making similar representations to Lay, the expression is insignificant, as that employee's position was still eliminated.

In sum, like the plaintiff in *Berquist*, Lay "fails to raise a genuine [dispute] of material fact regarding the evidence presented to support [Singing River]'s legitimate, non-discriminatory reason for [her RIF retirement]". 500 F.3d at 356 (also assuming *arguendo* a *prima facie* case). Restated, a reasonable factfinder would not return judgment for Lay regarding her claimed wrongful termination for age discrimination, whether considering her contentions that her same position was duplicated, that she was forced to retire, or that Singing River's decisionmakers made age-related discriminatory comments.

III.

For the foregoing reasons, the judgment is AFFIRMED.