[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10836
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-22998-KMW

DANNIE CONNER,

Plaintiff-Appellant,

versus

BELL MICROPRODUCTS-FUTURE TECH, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 24, 2012)

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Dannie Connor, a 60-year-old African-Carribean individual, appeals the district

court's grant of Bell Microproducts-Future Tech's ("Bell") motion for summary judgment as to his complaint alleging race and age discrimination under 42 U.S.C. § 1981 and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623(a)(1).  Connor alleged that Bell discriminated against him by denying him bonuses that he earned and by terminating him. Bell justified Connor's compensation by asserting that he had the highest base salary amongst his colleagues, and that his colleagues held greater responsibility and generated more sales revenue.  It justified Connor's termination as part of a reduction-in-force that it undertook in order to eliminate redundancies and reduce payroll, and produced evidence that it did not consider him for another position due to performance concerns.

On appeal, Connor argues that: (1) he has presented sufficient evidence of similarly-situated comparators to support a prima facie case of discrimination; (2) he presented sufficient evidence to permit a finding that Bell's justifications for its decisions were pretext for discrimination; and (3) even if these arguments fail, he presented sufficient evidence pursuant to Smith v. Lockheed-Martin Corp., 644 F.3d 1321 (11th Cir. 2011), to permit an inference of discrimination that would allow him to survive summary judgment.  After thorough review, we affirm.

We review de novo a district court's grant of summary judgment, and view all of the evidence and make reasonable inferences from the evidence in favor of the

2

non-movant.  Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).  Summary judgment is appropriate if the movant shows that no genuine issue of material fact exists, and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).  The movant bears the burden of demonstrating that no genuine issue of material fact exists, see Brooks v. Cnty. Comm'r of Jefferson Cnty., 446 F.3d 1160, 1162 (11th Cir. 2006), although the non-movant must make a sufficient showing on each essential element of his case for which he has the burden of proof, see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A "mere scintilla" of evidence supporting the opposing party's position will not suffice.  Brooks, 446 F.3d at 1162.  We may affirm a grant of summary judgment on any basis supported by the record.  Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 960 (11th Cir. 2009).

All persons in the United States have the same right to make and enforce contracts.  42 U.S.C. § 1981(a).  Likewise, an employer may not discharge any individual who is at least 40 years old because of his age, 29 U.S.C. §§ 623(a)(1), 631(a), and the plaintiff must show that his age was the "but-for" cause of any disparate treatment, see Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176-77, 180, (2009).  We analyze § 1981 claims using the same evidentiary requirements and analytical framework as Title VII, see Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1330 (11th Cir. 1998), and have adapted Title VII principles to ADEA claims,

3

see Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 919 (11th Cir. 1993). Absent direct evidence of discrimination, we apply the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), when evaluating discrimination claims under § 1981 and the ADEA. See Chapman, 229 F.3d at 1024 (ADEA); Standard, 161 F.3d at 1331 (§ 1981).

Under the McDonnell Douglas framework, a plaintiff may establish a prima facie case of discrimination by demonstrating that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly-situated employees outside of his class more favorably; and (4) he was qualified for the job. See Burke-Fowler v. Orange Cnty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006) (addressing Title VII); Chapman, 229 F.3d at 1024 (ADEA). In order to make a valid comparison, the plaintiff must show that he and the comparators are similarly situated in all relevant respects. See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). The comparator must be nearly identical to the plaintiff in order to prevent courts from second-guessing an employer's reasonable decisions. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004). Under the ADEA, the comparator must also be younger than the plaintiff. See Chapman, 229 F.3d at 1024.

We have modified the plaintiff's prima facie burden where he was terminated

4

as part of a reduction-in-force, such that the plaintiff must make a showing that: (1) he is a member of a protected class; (2) he was terminated; (3) he was qualified for another position at the time of the termination; and (4) the employer intended to discriminate in failing to consider him for another position. See Rowell v. BellSouth Corp., 433 F.3d 794, 798 (11th Cir. 2005) (ADEA); Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs, 47 F.3d 1068, 1073 (11th Cir. 1995).  In order to satisfy the last prong, the plaintiff must produce some evidence that the employer did not treat him neutrally with respect to his protected-class membership, but, instead, discriminated upon it.  See Rowell, 433 F.3d at 798.  The evidence must lead the factfinder to reasonably conclude either that the employer consciously refused to consider retraining or relocating the plaintiff due to his protected-class membership, or that the employer considered his protected-class membership as a negative factor in that consideration.  Id.

Once a plaintiff establishes a prima facie case of discrimination, the employer may rebut the resulting presumption of discrimination by articulating at least one legitimate, non-discriminatory reason for its action.  See Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010) (Title VII context); Watkins v. Sverdrup Tech., Inc., 153 F.3d 1308, 1314 (11th Cir. 1998) (ADEA).  Upon doing so, the burden shifts back to the plaintiff to produce evidence that the employer's

5

proffered reason is a pretext for discrimination. See Alvarez, 610 F.3d at 1264; Watkins, 153 F3d at 1314. The plaintiff must meet the employer's reason head on and rebut it, and may not simply quarrel with the wisdom of the reason. See Brooks, 446 F.3d at 1163. He may do this either directly by persuading the court that a discriminatory reason more likely than not motivated the employer, or indirectly by showing that the proffered reason is unworthy of credence. See Jackson v. State of Ala. Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (§ 1981); Watkins, 153 F.3d at 1314. We must evaluate whether the plaintiff has demonstrated such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered reason so that a reasonable factfinder could conclude that it is unworthy of credit. See Jackson, 405 F.3d at 1289; Watkins, 153 F.3d at 1314. To demonstrate pretext, the plaintiff must show both that the employer's proffered reason is false, and that discrimination was the real reason. See Brooks, 446 F.3d at 1163.

Here, as for Bell's alleged failure to pay the monthly bonus, the parties did not dispute that Bell permitted Connor to retain his Director of Sales compensation package, which did not provide for monthly bonuses, upon his demotion. Connor did not, however, present any evidence of an individual who, like himself, retained a Director of Sales's compensation package upon his demotion from that position to a Territory Manager, but to whom Bell nonetheless paid a monthly bonus. He,

6

therefore, failed to establish a prima facie case of race or age discrimination, as he did not establish a similarly-situated comparator. See Wilson, 376 F.3d at 1091; Holifield, 115 F.3d at 1562. It is also undisputed that manufacturers provided a different type of bonus, and that Bell did not control that bonus. Connor did not present any evidence that Bell otherwise interfered with his receipt of this other bonus, and he, therefore, failed to make the prima facie showing that Bell treated him differently than a similarly-situated employee. See Burke-Fowler, 447 F.3d at 1323; Chapman, 229 F.3d at 1024.

As for the quarterly bonus, Connor's claims of discrimination arose from Bell's alleged failure to pay him bonuses to which he was entitled whereas it paid Nelly Osorio and Ruth Ramirez those same bonuses. In support of his prima facie burden of establishing similarly-situated comparators, evidence suggested that Connor, Osorio, and Ramirez performed, in substance, the same job, and that Connor was eligible for the quarterly bonus as a Territory Manager. Nonetheless, Osorio and Ramirez do not appear to be proper comparators. It is undisputed that both of them met or surpassed their sales targets, thereby entitling them to bonuses. Likewise, Connor conceded that he did not always meet his revenue target, and, although the parties dispute the exact amounts, the evidence established that Connor received bonus payments in addition to his annual base salary. Thus, the evidence suggested

7

either that Connor was ineligible for the quarterly bonus or that he received the quarterly bonus at certain times, but the record lacks any more than a mere scintilla of evidence that Bell denied him a quarterly bonus that he had rightfully earned. Thus, Connor was not comparable to Osorio and Ramirez, and as a result, Connor failed to establish a prima facie case of race or age discrimination.

As for Connor's termination discrimination claim, even assuming he established a prima facie case, he did not present evidence of pretext. Connor first challenges the validity of the reduction-in-force by arguing that Javier Mena replaced him. However, neither the affidavit of Candido Sosa nor the website that he relies upon established Mena's responsibilities with Bell or permitted a finding that he assumed any of Connor's prior job duties. Additionally, Connor testified that he did not have personal knowledge of Mena's responsibilities.

In contrast, Bell presented evidence that Marina Lopez, not Mena, assumed the Territory Managers' duties upon the reduction-in-force. Additionally, Bell presented Mena's testimony that his responsibilities did not change upon the reduction-in-force, and that his duties did not compare with Connor's while he was a Territory Manager. Since Connor left this evidence unchallenged beyond his conclusory assertion that Mena replaced him, the undisputed evidence established that Mena's responsibilities were not comparable with Connor's, and the two individuals were not similarly

8

situated, see Wilson, 376 F.3d at 1091; Holifield, 115 F.3d at 1562.  Thus, Mena's role within Bell in relation to the reduction-in-force does not tend to establish that the reduction-in-force was merely a pretext for discrimination.  See Watkins, 153 F.3d at 1315-16 (holding that the "most fatal shortcoming" of the plaintiffs' attempt to demonstrate that the employer's reduction-in-force was a pretext for age discrimination was their failure to demonstrate that new employees were similarly situated to them).

Connor also challenges Bell's performance justifications for his termination by arguing that: (1) nothing in his employment file indicates poor performance, and he took on greater responsibility when he was the Director of Sales; (2) Bell would not have offered him a severance if it had performance concerns; (3) Avnet, Inc. acquired Bell soon after Bell offered him a severance; and (4) Ramirez testified that no performance concerns existed as to him.  Connor did not, however, present sufficient evidence to permit a jury to discredit Bell's performance justifications, or otherwise conclude they were pretext for discrimination.  As for Connor's reliance upon his employment file and Ramirez's testimony about Connor's performance, this evidence is raised for the first time on appeal and is not in the record.  Moreover, while Connor points to his tenure as the Director of Sales to challenge Bell's performance concerns, the undisputed evidence established that Bell demoted him from that position in 2003

9

due to performance concerns.  Thus, Connor's tenure as the Director of Sales until 2003 does not discredit Bell's assertions that performance concerns disqualified him from that position in 2010.  Finally, Connor only speculates that Bell would not have offered him a severance if it harbored performance concerns, and fails to explain the relevance of Avnet's subsequent acquisition of Bell to the pretext issue.

Moreover, Bell proffered to the district court that it terminated Connor as part of the reduction-in-force in an effort to eliminate redundancy and reduce payroll. Connor, however, altogether failed to impeach these justifications before the district court, and has not challenged them on appeal.  His failure to do so works to defeat a showing of pretext.  See Watkins, 153 F.3d at 1316-17 (noting that the plaintiffs failed to impeach all of the employer's proffered reasons for their terminations as part of a reduction-in-force to the extent that a reasonable jury could find them unworthy of credence).  Accordingly, the district court properly granted Bell's motion for summary judgment as to Connor's termination discrimination claims under § 1981 and the ADEA.[1]

---

[1] We recognize that even though Connor failed to satisfy the McDonnell Douglas framework for these claims he also could have survived summary judgment by presenting circumstantial evidence creating a triable issue as to the employer's discriminatory intent.  See Smith, 644 F.3d at 1328.  Under Smith, a plaintiff may create such an issue by presenting a "convincing mosaic of circumstantial evidence" that would permit an inference of intentional discrimination by the decision-maker.  See id.  Smith addressed the termination of a white supervisor for distributing a racially-insensitive e-mail targeting blacks during a time in which his employer was subjected to intense public scrutiny regarding its purported tolerance of racial

In short, the district court properly granted Bell's motion for summary judgment, and we affirm.

**AFFIRMED.**

---

hostility against blacks by whites in the workplace in relation to an apparently racially-motivated mass shooting by a white supremacist employee. See id. at 1324, 1329-35. Connor compares his case to Smith, arguing that, in addition to his evidence of comparators, he produced sufficient circumstantial evidence that permitted an inference of discrimination, in that Osorio and Ramirez were invited to President's Club outings in lieu of himself and that Lou Leonardo, the President of Bell Microproducts-Latin America, arbitrarily changed revenue targets to benefit Osorio. Connor's evidence, however, does not compare with that presented in Smith, where the employee presented evidence that his employer was particularly concerned with race and all of the circumstantial evidence connected its employees' race to the employer's decision-making. See id. at 1327-47. Indeed, Connor did not present sufficient evidence tying Bell's decisions to his age or race. Nor did Connor present any evidence that he was similarly situated to either Osorio or Ramirez with respect to those decisions, especially given the undisputed facts that they held greater responsibility and generated more revenue than Connor, see Wilson, 376 F.3d at 1091; Holifield, 115 F.3d at 1562. In short, Connor did not present the "convincing mosaic of circumstantial evidence" that this Court found sufficient in Smith to survive summary judgment. See Smith, 644 F.3d at 1328.