# IN THE SUPREME COURT OF TEXAS

No. 19-0790

TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER-EL PASO, PETITIONER,

v.

LORETTA K. FLORES, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE EIGHTH DISTRICT OF TEXAS

**Argued October 7, 2020**

JUSTICE BOYD delivered the opinion of the Court.

Texas law prohibits employers from taking adverse employment actions against employees *because* they are older, but it doesn't prohibit them from taking such actions against employees *who* are older. In this case, the plaintiff failed to submit legally sufficient evidence to establish a prima facie case that her governmental employer demoted her *because* she was older. Because the Legislature has not waived governmental immunity in the absence of such evidence, we reverse the court of appeals' judgment and dismiss the plaintiff's age-discrimination claim for lack of jurisdiction.

## I.
**Background**

Loretta Flores has worked for Texas Tech University Health Sciences Center-El Paso since 1993. Initially hired as a temporary medical secretary, Flores worked her way up within the

organization, to assistant to the chair of the family-medicine department, coordinator for the chair of the pediatrics department, executive administrative associate for the regional dean, and finally, the "director" in charge of operations in the regional dean's office. She consistently received positive evaluations and reviews from her supervisors, including the regional dean, Dr. Jose Manuel de la Rosa.

During the first twenty years that Flores worked at Texas Tech-El Paso, the school operated as a regional campus of the Texas Tech University School of Medicine. In 2013, however, it became a separate university within the Texas Tech University System. Unlike regional campuses, which are led by a regional dean, universities are led by a president. An interim president initially led Texas Tech-El Paso from the time it became a university in 2013 until July 2014. During this period, Flores worked as the director in what had become the president's office, assisting both the interim president and Dr. de la Rosa. In recognition of the work she was performing as director during the transition, Flores received a forty percent salary increase from around $60,000 to around $85,000 per year.

In July 2014, the System's board of regents named Dr. Richard Lange as the university's first president and dean of the university's medical school. Once President Lange arrived, Flores continued to work as the director in the president's office, assisting both President Lange and Dr. de la Rosa. President Lange spent his first several months evaluating the office staff's various roles and performance and deciding how he wanted to restructure the administrative operations. In November 2014, President Lange appointed Dr. de la Rosa as the university's provost and vice president of academic affairs.

By February 2015, President Lange decided to eliminate the director position as part of the restructuring of his office. He concluded he did not need a director because he planned to be more "hands-on" and not delegate as much as Dr. de la Rosa had. Instead, he decided he needed an "Assistant to the President," a "more administrative" position, to handle "scheduling, clerical and other administrative functions." The assistant-to-the-president position had not previously existed within the dean's or president's office.

President Lange asked Dr. de la Rosa to provide input on whom he might appoint as the new assistant to the president. Dr. de la Rosa provided his evaluations of the strengths and weaknesses of the employees working in the president's office. Regarding Flores, he told President Lange he did not think Flores and President Lange would "make a good fit." President Lange agreed that Flores did not have the right "skill set" for the position. He "lacked confidence" in her "ability to lead the office staff," believed she had "deficiencies in the quality of her work," and she "had not taken direction well" since he had come on board. He had never expressed these concerns to Flores, however, or documented them in writing in the roughly three months since he had become president.

On March 1, 2015, President Lange appointed Vanessa Solis as the new assistant to the president. Flores had hired Solis in 2010 as an executive associate in the dean's office. Solis performed well in that role, and Flores often delegated supervisory duties to Solis when Flores was traveling or out for extended periods. After President Lange arrived in 2014, Solis began reporting to both Flores and President Lange. Over the ensuing months, President Lange directed Solis to assume some of Flores's duties, including handling communications with the board of regents, preparing their meeting agendas, and managing President Lange's calendar. When President Lange

3

hired Solis as assistant to the president, he did so without publicly posting the position or interviewing any other candidates. Solis was in her mid-thirties at the time, more than twenty years younger than Flores. Her salary in this new position increased to just over $58,000.

By May 2015, Flores knew from her conversations with President Lange that she would likely lose her position as director in the president's office. Having worked at Texas Tech-El Paso for more than twenty years, she was "not new to transition." She expected that President Lange would make changes to his staff, and she acknowledged that he "could do whatever he wanted to as a new leader."

Dr. de la Rosa had wanted Solis to work for him in the provost's office. When President Lange selected Solis as his new assistant, he suggested Dr. de la Rosa take Flores because Dr. de la Rosa had hired Flores and they had worked well together for many years. When President Lange informed Flores that she would be moving to the provost's office, he told her he did not want her to retire or leave the university and instead wanted her to continue assisting Dr. de la Rosa.

Because Flores would no longer be working as director in the president's office, Dr. de la Rosa had to determine what her position would be in the provost's office. He discussed this with Flores, and together they created a list of what her new job duties would be. Based on this list, the university's executive director of human resources, Rebecca Salcido, determined that Flores's new role aligned most closely with an executive associate position, a position Flores had first attained nearly twenty years earlier. The approved salary range for this position was $37,000 to $64,000.

Salcido recommended to President Lange that Flores be reclassified as an executive associate with an annual salary of $60,000, essentially the amount Flores was making before she received the forty-percent raise under the interim president the previous year. President Lange

4

agreed with and approved the reclassification, but he authorized the maximum salary of $64,000 for the position. When Flores began this new position on August 1, 2015, she was 59 years old. Although other administrative staff were reclassified due to the restructuring, Flores was the only one who received a pay cut.

Flores sued for age discrimination. Texas Tech-El Paso filed a plea to the jurisdiction. The trial court denied the plea, and the court of appeals affirmed. *Tex. Tech Univ. Health Scis.-El Paso v. Flores*, 587 S.W.3d 831, 835 (Tex. App.—El Paso 2019). It concluded that Flores's evidence created fact issues on whether President Lange "replaced" Flores with a younger worker (Solis) and whether President Lange's stated reasons for reclassifying Flores were pretexts for age discrimination. *Id.* at 840, 844. We granted Texas Tech-El Paso's petition for review.

## II.
## Age Discrimination

The Texas Commission on Human Rights Act prohibits an employer from committing an "unlawful employment practice" against an employee "because of" the employee's "race, color, disability, religion, sex, national origin, or age." TEX. LAB. CODE § 21.051.[1] Regarding age discrimination, the Act protects employees who are "40 years of age or older." *Id.* § 21.101. Generally, an employer commits an unlawful practice "because of" an employee's age if the employee's age was "a motivating factor" for the practice, "even if other factors also motivated the practice." *Id.* § 21.125(a).

---

[1] Texas modeled the Act on its federal counterparts. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001). In fact, one of the Act's stated purposes is to "provide for the execution of the policies of Title VII of the [federal] Civil Rights Act of 1964 and its subsequent amendments." TEX. LAB. CODE § 21.001(1). For this reason, Texas courts "may consider how the federal act is implemented under clauses similar to those at issue in the Texas act." *Caballero v. Cent. Power & Light Co.*, 858 S.W.2d 359, 361 (Tex. 1993) (quoting *Eckerdt v. Frostex Foods, Inc.*, 802 S.W.2d 70, 72 (Tex. App.—Austin 1990, no writ)).

Because Texas Tech-El Paso is a state university, sovereign immunity bars any suit against it unless the Legislature has expressly waived that immunity. *Univ. of Tex. Health Sci. Ctr. at Hous. v. Rios*, 542 S.W.3d 530, 532 n.4 (Tex. 2017). The Texas Commission on Human Rights Act waives sovereign immunity from suit, but only if the plaintiff alleges facts that would establish that the state agency violated the Act and, when challenged with contrary evidence, provides evidence that is at least sufficient to create a genuine fact issue material to that allegation. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770–71 (Tex. 2018). When determining whether a plaintiff has met this burden, we must assume that all evidence supporting the plaintiff's allegations is true, and we must resolve all doubts and make all reasonable inferences in the plaintiff's favor. *Id.* at 771.

## A. Evidentiary burdens

In its jurisdictional plea and in this Court, Texas Tech-El Paso argues that the Act does not waive its sovereign immunity against Flores's claim because it established that Flores's age was not a motivating factor behind her reassignment, and Flores submitted no evidence to the contrary.

To establish unlawful discrimination, a plaintiff may rely on either direct or circumstantial evidence. *Id.* at 782. Noting that direct evidence of discriminatory intent is typically "hard to come by," *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012), Flores relies primarily on circumstantial evidence. When a plaintiff relies on circumstantial evidence to establish a discrimination claim, we follow the burden-shifting framework the United States Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Alamo Heights*, 544 S.W.3d at 764, 782. Under this framework, (1) the plaintiff must first create a presumption of illegal discrimination by establishing a prima facie case, (2) the defendant must

then rebut that presumption by establishing a legitimate, nondiscriminatory reason for the employment action, and (3) the plaintiff must then overcome the rebuttal evidence by establishing that the defendant's stated reason is a mere pretext. *Id.* at 782. Although the parties dispute all three steps, we need only address the first because we conclude that Flores has failed to establish a prima facie case.

## B. Prima facie case

The requirements for establishing a prima facie case "vary depending on the circumstances." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 583 (Tex. 2017). In an age-discrimination case, the plaintiff establishes a prima facie case with evidence that she (1) was a member of the protected class (that is, 40 years of age or older), (2) was qualified for the position at issue, (3) suffered a final, adverse employment action, and (4) was either (a) replaced by someone significantly younger or (b) otherwise treated less favorably than others who were similarly situated but outside the protected class. *See Mission Consol.*, 372 S.W.3d at 632; *AutoZone v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam). Texas Tech-El Paso does not dispute that Flores has established the first three elements, so we need only address the fourth.

### 1. Replaced by someone significantly younger

Flores first contends that she submitted evidence to support the fourth element of her prima facie case because President Lange replaced her with Vanessa Solis, who was more than twenty years younger than Flores. Texas Tech-El Paso disagrees, arguing that President Lange did not "replace" Flores with anyone, but instead eliminated her director position and appointed Solis to a new and different assistant-to-the president position, all as part of his restructuring of the office. The undisputed evidence establishes that Flores was removed from her position as director (a

7

position that paid about $85,000 and no longer exists), while Solis was promoted to a new position as assistant to the president (a position that paid about $58,000 and did not previously exist). Focusing solely on the titles and salaries for the two positions, we would agree with Texas Tech-El Paso that Solis did not "replace" Flores in the president's office.

But we also agree with Flores that the determination of whether one employee replaced another cannot depend *solely* on the employees' job titles and salaries. Such a rule would enable employers to simply manipulate titles and salaries to prevent terminated or demoted employees from ever establishing a prima facie case. Instead, we must look not merely to the employees' titles and salaries, but also to their actual duties, comparing the duties of the plaintiff's prior position with those of the employee she alleges replaced her. *Baker v. Gregg County*, 33 S.W.3d 72, 81 (Tex. App.—Texarkana 2000, no pet.) ("A determination of whether an employee was actually replaced by another requires an inquiry into the job position and duties performed by the terminated employee, and an inquiry into the work performed by the person who is alleged to have replaced that employee.").

Texas Tech-El Paso argues this is not a "true replacement" case, *see Mission Consol.*, 372 S.W.3d at 632, because Flores's duties as director were not substantially the same as Solis's duties as assistant to the president. We agree. Texas courts and others around the country have struggled at times to determine whether a plaintiff who asserts employment discrimination has truly been "replaced." In the clear-cut case, the plaintiff simply demonstrates that she was removed from her position and a new employee was hired to fill that same position and take over the same duties. *See Baker*, 33 S.W.3d at 81–82 ("[A] terminated employee is replaced by another person when the terminated employee's position is filled by that person and that person is assigned the terminated

8

employee's former job duties."). A plaintiff can also easily show replacement when the employer promotes an existing employee to fill the plaintiff's position and assume those duties. *Id.* at 82 ("It is possible for a terminated employee to be replaced by someone who already works for the employer so long as that employee completely takes over the terminated employee's job duties."); *see Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 522 (6th Cir. 1997) (holding employer "effectively replaced" plaintiff by promoting existing part-time employee to full-time status to assume plaintiff's duties).

But courts faced with more complicated facts have not always agreed. Most (but not all) have held that the plaintiff is not "replaced" when she is removed from her position and (1) only some of her duties are assigned to an existing employee,[2] (2) her duties are only temporarily assigned to another employee,[3] or (3) her duties are distributed among multiple existing employees.[4] And those that have considered whether the plaintiff is replaced when the employer

---

[2] *See Baker*, 33 S.W.3d at 81 ("Consequently, a terminated employee is not replaced by . . . a person who only takes over a part of those duties."); *see also Gates v. Forrest Gen. Hosp.*, No. 98-60451, slip op. at 2, 1999 WL 800319, *1 (5th Cir. Sept. 24, 1999) ("Because only a small part of her duties as Education Coordinator were assigned to another employee already performing other duties as Therapy Coordinator, [plaintiff] cannot be considered as having been replaced by another employee."); *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 149–50 (5th Cir. 1995) (finding no replacement when only "a small percentage" of plaintiff's duties were assumed by another employee); *but see Pilcher v. Cont'l Elecs. Corp.*, No. 96-11130, slip op. at 7–8, 1997 WL 450078, at *3 (5th Cir. July 8, 1997) (citing *Young v. City of Houston*, 906 F.2d 177, 182 (5th Cir. 1990)) ("We have previously held that a plaintiff is entitled to a jury trial when he presents evidence that some of his duties were assumed by a replacement employee.").

[3] *See Baker*, 33 S.W.3d at 81.

[4] *See City of Granbury v. Willsey*, No. 02-17-00343-CV, 2018 WL 1324774, at *4–5 (Tex. App.—Fort Worth Mar. 15, 2018, no pet.) (holding plaintiff was not replaced when his duties were "distributed among five individuals" and "no one employee completely took over [plaintiff's] job duties"); *Baker*, 33 S.W.3d at 81–82 (holding plaintiff is not replaced when her duties "are distributed among other employees"); *see also Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 373 (6th Cir. 1999) (holding plaintiff was not replaced when two existing employees assumed plaintiff's duties but "maintained their prior job titles and responsibilities"); *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992) ("Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement."); *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) (holding plaintiff is not replaced when "the work is redistributed among other existing employees already performing related work"); *but see Griffin v. Sisters of Saint Francis, Inc.*, 489 F.3d 838, 845 (7th Cir. 2007) ("When an employee in a unique position is terminated and

9

assigns all of the plaintiff's duties to an existing employee without placing that employee in the plaintiff's former position have reached opposite results. *Compare Houk v. Peoploungers Inc.*, 214 F. App'x 379, 381 (5th Cir. 2007) (affirming summary judgment when no employee was "hired or promoted into the job" but job duties were assigned to another employee), *with LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 449 (5th Cir. 1996) (holding plaintiff was replaced by existing employee who assumed plaintiff's "responsibilities as second-in-command").

We need not take positions on all possible scenarios in this case. Here, the plaintiff was removed from her position, that position was not filled, an existing employee was given a new and different position, and the existing employee was assigned some but not all of the plaintiff's former duties. We hold that, under such circumstances, the evidence is sufficient to create a fact issue over whether the existing employee truly replaced the plaintiff if the existing employee's duties in her new position are so similar to the plaintiff's former duties that a reasonable juror could conclude that the existing employee actually took or was placed in the plaintiff's former job or position.[5] This holding ensures that the "true replacement" method for establishing the fourth element of a

---

her position is not filled, but employees outside the protected class assume the fired employee's responsibilities, the employer has effectively replaced the employee."); *McLaughlin v. W & T Offshore, Inc.*, 78 F. App'x 334, 338 (5th Cir. 2003) (holding an employee can be considered replaced even if she was "not replaced by a single person" if her duties were "delegated" to other existing employees). Flores notes that we once acknowledged evidence that a plaintiff "was replaced by two considerably younger engineers." *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 482 (Tex. 2001). We provided no further discussion about that point, however, and the court of appeals concluded in that case that the plaintiff established that he was replaced by only one employee, "a 33-year-old woman." *Toennies v. Quantum Chem. Corp.*, 998 S.W.2d 374, 379 (Tex. App.—Houston [1st Dist.] 1999), *aff'd*, 47 S.W.3d 473.

[5] *See Dall. Indep. Sch. Dist. v. Allen*, No. 05-16-00537-CV, 2016 WL 7405781, at *8 (Tex. App.—Dallas Dec. 22, 2016, pet. denied) ("Under either definition, what must be shown is that [the incoming employee] took or was placed in [the plaintiff's] job or position. This necessarily requires a showing that [the incoming employee] performed the same job duties as Allen."); *Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 436 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("[T]he touchstone for determining whether [the plaintiff's] lay-off might constitute impermissible age discrimination is the similarity of the jobs held by the protected class employee and the younger employee."); *Barnes*, 896 F.2d at 1465 ("A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.").

prima facie case fulfills its intended purpose of justifying a presumption that the plaintiff was removed "because of" her protected status. *Alamo Heights*, 544 S.W.3d at 782 (noting that the purpose of the *McDonnell Douglas* framework is to create "a rebuttable presumption of discrimination").

Based on the evidence in this record, a reasonable juror could not conclude that Solis took or was placed in Flores's former position as director in the president's office. Flores testified by deposition that President Lange assigned "[a]ll" of her director duties to Solis and that, "[f]or the most part, all of [her] duties were . . . transferred over to" Solis. But when pressed about these conclusory assertions, she conceded that she actually did not "know what [Solis's new] duties were," "how [President Lange] restructured the . . . duties," or "how the duties were distributed" after she left the president's office. She only knew she was no longer the one who was performing them.

As President Lange and others agreed, Solis certainly assumed *some* of Flores's duties. According to the testimony and the job description prepared for the assistant-to-the-president position, Solis's new duties as assistant to the president included:

- interacting with the board of regents and preparing their meeting agendas,
- performing administrative and coordinative work in the president's office,
- supervising staff, students, and volunteers in the office,
- managing the president's schedule and day-to-day activities,
- managing communications, correspondence, and reports for the president,
- assisting the president with legislative initiatives and reports,
- facilitating special projects for the president,
- assisting with the development and management of the budget,
- managing the president's travel and reimbursements,
- chairing the annual state employee charitable contributions campaign,
- representing the president as directed as a member of national organizations, and
- assisting with paperwork for faculty recruitment.

Flores performed, or at least was ultimately responsible for, many of these same (or very similar) duties in her position as director.[6] But the director position included numerous additional duties that no evidence indicates Solis assumed in her position as assistant to the president. As director, for example, Flores was responsible for:

- managing the school's accreditation process, including initiating and following up on the process, ensuring all the necessary consultants and experts were retained and had the necessary documentation, ensuring all deadlines were met, collaborating with personnel from other departments, and responding to requests and inquiries,
- managing special projects, including collaborating with other deans and the human-resources department to set up the new nursing school (including organizational development, creation of an administrative structure, preparation of job descriptions, and oversight of onboarding of new personnel),
- providing similar oversight in setting up a new research department and global-health office,
- working with the facilities department to oversee the renovations of the nursing-school facilities,
- coordinating the recruitment, hiring, appointment, and enrollment of new faculty members,
- developing and implementing new policies and procedures,
- assisting the dean with strategic planning,
- directing and approving purchases of equipment for the office,
- serving as liaison to and collaborating with all university personnel and the community at large,
- serving as the dean's liaison for student recruiting,
- directing and coordinating the school's government-relations activities,
- representing the dean at internal and external meetings,
- maintaining all communications with university departments and outside agencies,
- overseeing the budget for the student-run clinic,
- directing and managing meetings, retreats, and other functions involving university leadership,
- coordinating the hosting of visiting dignitaries,
- managing the department whenever leadership was absent,
- serving as the dean's liaison to the Texas Medical Board and other agencies to ensure recruitment, licensing, and visas for faculty,
- facilitating the evaluation process for senior leadership, and

---

[6] These included managing paperwork, correspondence, presentations, and reports; supervising and managing office support staff; serving as a member of national organizations on the dean's behalf; managing the dean's day-to-day activities; assisting with legislative initiatives and reports; and developing and administering the budget.

- serving as the dean's "problem-solver."

As Flores herself summarized, her job as director was to ensure that "all the activities happening on campus were carried out on behalf of the dean." Solis's job description, by contrast, was not nearly as broad and does not suggest even a "similar" level of authority and responsibility, particularly with respect to the school's other departments, faculty, and leadership. As Flores notes, some of her duties and responsibilities, as well as some of Solis's, shifted and evolved from time to time, especially during the transition from a dean-led regional campus to a president-led university. But the evidence here simply would not permit a reasonable juror to conclude that Solis's new position was so similar to Flores's former position that Solis essentially took over Flores's job. To put it simply, the undisputed evidence conclusively establishes that Flores stopped being a "director" and Solis became an "assistant."

Flores relies in part on evidence that in September 2016, a year and a half after President Lange hired Solis as assistant to the president, Solis received an almost $22,000 raise, putting her salary at or near the amount Flores earned as director. Solis testified that during her annual evaluation that year, she asked for a salary increase or that her title be changed to "chief of staff" or "executive director" because she believed "the duties [she] was doing merited an increase or a different title change." President Lange reviewed her request with the human-resources department and decided to give her the raise but not to change her title because "he felt this position was exactly what it was, what he needed in his office at the time and exactly the duties [Solis] was doing." Flores argues that this is some evidence that Solis replaced Flores as director, but we cannot agree. The issue is whether Solis replaced Flores in March 2015, not whether Solis's duties had expanded by September 2016. And in any event, the record contains no evidence that Solis's

duties had in fact expanded beyond what we've described. President Lange apparently appreciated Solis's work enough to authorize a substantial salary increase, but he declined to change her title because she was not performing the duties of a chief of staff or a director.

Based on the record evidence, we conclude that Flores has not established a prima facie case on the theory that she was "replaced" by someone significantly younger. Instead, the evidence establishes only that President Lange restructured and reorganized the president's office, resulting in the elimination of Flores's director position and the creation of a new and different assistant-to-the-president position.[7] In the absence of evidence from which a reasonable juror could conclude that Solis took or was placed in Flores's job or position, Flores cannot sustain a prima facie "true replacement" case.[8]

## 2. Less favorable treatment

A plaintiff who was not replaced can still meet the fourth element of a prima facie discrimination case by presenting evidence that she was treated less favorably than others who were similarly situated but outside the protected class. *See Mission Consol.*, 372 S.W.3d at 640–41; *AutoZone*, 272 S.W.3d at 592. This alternative method acknowledges that employees may

---

[7] *See, e.g.*, *Webb v. ServiceMaster BSC LLC*, 438 F. App'x 451, 454 (6th Cir. 2011) (holding that plaintiff was not replaced when employer "restructured" the work group, "after which no exact replica of" plaintiff's job existed); *Gortemoller v. Int'l Furniture Mktg., Inc.*, 434 Fed. Appx. 861, 863 (11th Cir. 2011) (affirming summary judgment when plaintiff was not replaced because employer "streamlined" business); *Meeson v. Bd. of Regents of Tex. S. Univ.*, No. 03-20361, 2003 WL 22391313, at *2 (5th Cir. Oct. 20, 2003) (per curiam) (holding that plaintiff was not replaced when his job "was eliminated due to a planned university wide reorganization" and his alleged replacement "applied for another, different, position that was created by the reorganization" and months later "ended up with job responsibilities similar to those that plaintiff held").

[8] *See Lay v. Singing River Health Sys.*, 694 F. App'x 248, 255 (5th Cir. 2017) (holding there was "no genuine dispute of material fact" on replacement when plaintiff did not know "the full responsibilities" of the replacement); *Connor v. Bell Microproducts-Future Tech, Inc.*, 492 F. App'x 963, 966–67 (11th Cir. 2012) (affirming summary judgment when plaintiff did not have personal knowledge of alleged replacement's job duties and alleged replacement testified that his duties "did not compare" with plaintiff's); *Fields v. J.C. Penney Co.*, 968 F.2d 533, 537 (5th Cir. 1992) (holding that it was "immaterial" that younger employee was promoted when her "job was separate and apart from any duties previously performed by" plaintiff).

suffer adverse employment actions without actually being replaced in their positions. For example, an employer may "lay off" an employee as part of a workforce reduction[9] or terminate an employee for alleged misconduct[10] without filling the empty position. Or an employer may simply refuse to promote an employee.[11] In any of these circumstances, in which the employee is not "replaced," the employer's action may constitute illegal discrimination if the employee's age or other protected status was a "motivating factor."

To establish the fourth element under this approach, the plaintiff must submit evidence that she was "treated less favorably than similarly situated members of the opposing class." *AutoZone*, 272 S.W.3d at 592. The plaintiff cannot rely merely on evidence that she was "otherwise . . . discharged because of age," but instead must provide comparative evidence that she was treated less favorably than those who did not fit within the protected class. *Mission Consol.*, 372 S.W.3d at 640–41.[12]

---

[9] *See, e.g.*, *Barnes*, 896 F.2d at 1465 ("A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge."); *see also McCuen v. Home Ins. Co.*, 633 F.2d 1150, 1151 (5th Cir. 1981); *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1998); *Hawley v. Dresser Indus., Inc.*, 958 F.2d 720, 723 (6th Cir. 1992).

[10] *See AutoZone*, 272 S.W.3d at 590–91 (addressing discrimination claim by employee terminated for alleged sexual harassment); *Stoll v. C.P. Rail Sys.*, No. 00-1501, slip op. at 2, 2000 WL 1673384, *1 (8th Cir. Nov. 8, 2000) (affirming summary judgment when employer "never filled the specific vacancy created by Stoll's termination").

[11] *See*, *e.g.*, *Roberson-King v. La. Workforce Comm'n, Office of Workforce Dev.*, 904 F.3d 377, 381 (5th Cir. 2018) (stating that the fourth element requires a plaintiff who alleges her employer failed to promote her because of her age to show that she was "clearly better qualified" than the employee who got the promotion).

[12] Texas Tech-El Paso argues that the court of appeals erred by holding that Flores could satisfy the fourth element with evidence that she was "otherwise subjected to an adverse employment action because of her protected characteristic." *See* 587 S.W.3d at 839–40. We agree that we rejected that proposition in *Mission Consol.*, but we need not address that error here because Flores did not plead or rely on that alternative approach in this or any other court.

Flores argues that even if Solis did not "replace" her, she has at least established the fourth element under this "disparate treatment" approach.[13] More specifically, she argues that she and Solis were similarly situated and President Lange treated Solis more favorably by giving her a promotion and pay raise while demoting Flores and reducing her pay. We reject this argument because no evidence supports Flores's contention that she and Solis were similarly situated.

"Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005). Though their circumstances need not be "identical," *id.* at 917 n.3, they must be "nearly identical," *Autozone*, 272 S.W.3d at 594. "Employees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records are not considered to be 'nearly identical.'" *Id.*

The evidence here cannot support a finding that Flores and Solis were similarly situated when President Lange decided to restructure the office, eliminate Flores's director position, and appoint Solis as assistant to the president. At that time, Solis was an executive associate, hired by Flores and reporting to her and President Lange. "Employees who hold different jobs are not similarly situated and, 'ordinarily, it will not be the case that a plaintiff is similarly situated to

---

[13] Texas Tech-El Paso argues that Flores "abandoned" this argument, relying on a footnote in which the court of appeals stated that Flores "does not appear to defend the trial court's judgment on disparate treatment grounds." 587 S.W.3d at 840 n.3. True, Flores does not use the phrase "disparate treatment" in her briefing. But she does argue that she and Solis were "sufficiently similar" to demonstrate age discrimination. And she cites disparate-treatment cases in support of her contention of similarity. *See Vasquez v. El Paso Cty. Cmty. Coll. Dist.*, 177 F. App'x 422, 424 (5th Cir. 2006) (citing *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001)) (stating fourth element as showing "others similarly situated were treated more favorably"); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999) (quoting *Vaughn v. Edel,* 918 F.2d 517, 521 (5th Cir. 1990)) ("When the employer does not plan to replace the discharged plaintiff, the fourth element is 'that after [the] discharge others who were not members of the protected class remained in similar positions.'"). She made the same arguments in the court of appeals. [Ape Br 28-29] We therefore decline to hold that Flores has abandoned this theory.

16

another employee when the plaintiff is subordinate to that employee.'" *Rincones*, 520 S.W.3d at 584 (quoting *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006)). Moreover, some evidence indicates that President Lange was less than pleased with Flores's performance of her job duties while no evidence indicates that he or Flores were in any way dissatisfied with Solis's performance. Although Flores disputes his assessment (but not that it was in fact his assessment), no evidence raises any comparable concerns about Solis. *See Alamo Heights*, 544 S.W.3d at 791 (finding plaintiff and employee were not similarly situated because there was "no evidence [employee's] work performance was deficient in as many areas as [plaintiff's]"). Because no evidence supports Flores's argument that she and Solis were similarly situated, she cannot establish the fourth element of a prima facie case under the disparate-treatment approach.

### 3. Legitimate, nondiscriminatory reason

Addressing the second step of the *McDonnell Douglas* framework, Flores argues that Texas Tech-El Paso failed to present any evidence that President Lange had a legitimate, nondiscriminatory reason for demoting her. But we need not reach this issue because Flores has failed to satisfy the first step by establishing a prima facie case of age discrimination. Having failed to establish a prima facie case, Flores has failed to meet her burden to create a presumption that her age was a motivating factor behind her demotion, and the burden never shifts to Texas Tech-El Paso. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981) (noting the burden only shifts to defendant "if the plaintiff succeeds in proving the prima facie case").

### C. Direct evidence of discriminatory intent

A plaintiff who fails to establish a prima facie case of discrimination based on circumstantial evidence can still attempt to do so by relying on direct evidence of discriminatory

intent. *Mission Consol.*, 372 S.W.3d at 642. Flores, however, has not provided any such direct evidence.

In her effort to establish age discrimination based on direct evidence, Flores relies on her testimony that President Lange mentioned her possible "retirement" during their conversations about transitioning her position and responsibilities. Specifically, she testified that when President Lange told her she was going to go work for Dr. de la Rosa in the provost's office, he told her "out of the blue" that he did not want her to "retire."[14] She further testified that he made a similar comment one other time, although she could not recall exactly when. She admitted, however, that he never expressed a desire that she retire, but instead said he did not want her to retire.

We find these comments to be no evidence on which a reasonable juror could find that Flores's age was a motivating factor behind President Lange's decision to reassign her. To be sure, specific expressions of negativity or animosity about a person's age or other protected status can constitute direct evidence to support a claim of illegal discrimination. *See, e.g.*, *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 313 (5th Cir. 2004) (holding that employer's statement that employee was absent because "he's probably in bed or he's sleeping by [now] because of his age" is the type of comment that "easily establishes a prime facie case" that employee was "discharged because of his age"). Generally, such comments can constitute direct evidence of discriminatory intent "only if they are not stray, but instead are tied to the adverse employment action at issue both in terms

---

[14] President Lange disputes that he made this comment "out of the blue." He testified that when he informed Flores of the decision to assign her to the provost's office, she asked him if he was "trying to get rid of" her and wanted her to "retire." Lange says he responded that he did not want her to leave or retire and instead wanted her to continue assisting Dr. de la Rosa. Because we must take Flores's evidence as true for purposes of this appeal, *see Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004), we accept her assertion that he made the statement "out of the blue."

of when and by whom they were made." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475 (5th Cir. 2015).

Some courts have held that an employer's suggestion that an employee should retire does not constitute direct evidence of discriminatory intent because "there is no 'necessary' link between retirement and age," *Hill v. Dept. of Veterans Affs.*, No. 08-60532, 2009 WL 348767, at *2 (5th Cir. Feb. 12, 2009), and the connection thus requires the jury "to infer that [the employee] was fired because of his age," *Martin v. Bayland, Inc.*, 181 F.App'x 422, 423–24 (5th Cir. 2006). Others have held that neutral comments about the employee's eligibility for retirement also fail to demonstrate discriminatory intent or pretext. *See McMichael v. Transocean Offshore Deepwater Drilling*, 934 F.3d 447, 458 (5th Cir. 2019) (holding that commenting on an employee's eligibility for retirement raises no fact issue of pretext under the circumstantial evidence standard of *McDonnell Douglas*). While we need not agree or disagree with these holdings, we do agree with Texas Tech-El Paso that an employer's affirmative statement that he does *not* want his employee to retire does not constitute direct evidence of an age-basedd discriminatory intent.

Finally, Flores relies on her testimony that she believed that President Lange simply preferred to work around "younger employees," a belief she developed based on her observation that, under President Lange, the younger employees were receiving raises and opportunities to advance while she, the oldest in the group, was demoted in both position and salary. As we have explained, however, no evidence establishes that these "younger employees" and Flores were "similarly situated," and Flores's own subjective belief is insufficient to establish discriminatory intent. *See, e.g.*, *Elliott v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 564 (5th Cir. 1983) ("[G]eneralized testimony by an employee regarding his subjective belief that his discharge was

19

the result of age discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason for his discharge."). We thus hold that Flores has failed to produce any direct evidence that a discriminatory intent was a motivating factor in her demotion.

### III.
### Conclusion

As a long-time, executive-level employee at Texas Tech-El Paso, Flores fully expected that the new university's incoming president would make changes to his staff. That Flores was on the losing end of those changes simply does not justify an age-discrimination lawsuit. Although she was an older employee whom the Texas Commission on Human Rights Act protects against age discrimination, she has failed to present evidence from which a reasonable juror could conclude that her age was a motivating factor behind her demotion. The Act thus does not waive Texas Tech-El Paso's sovereign immunity from this suit, and the trial court therefore erred by not granting its plea to the jurisdiction. We reverse the court of appeals' judgment and render judgment dismissing Flores's claims for lack of jurisdiction.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: November 20, 2020